UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CORNELIUS LEMONT HINES,

    Plaintiff,

    v.　　　　　　　　　　　　　　　　CAUSE NO. 3:22-CV-672-DRL-JEM

RON NEAL *et al.*,

    Defendants.

OPINION AND ORDER

Cornelius LeMont Hines, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983 against six defendants. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

From March 6, 2022 to June 6, 2022, Mr. Hines was housed in D-Cell House, a segregated housing unit, at Indiana State Prison. ECF 1 at 5. He suffers from severe epileptic seizures and has a history of heat stress seizures. *Id.* at 3. At the time he filed his complaint, he states there was a heat wave, which also caused him to have heat exhaustion, heat sickness, and heat stroke. *Id.* Because of his epilepsy and susceptibility to illnesses caused by excessive heat, Mr. Hines asked Major Douglas Wardlow, who is

the Chief of Security, if he could have a second fan in his cell. *Id*. at 3-4. Mr. Hines alleges that Major Wardlow knew about his epilepsy because he had shown Major Wardlow his medical papers and the medical staff told Major Wardlow about his medical condition. *Id*. at 4. Major Wardlow denied Mr. Hines's request for a second fan because the prison's safety and security policy prohibited an inmate from having more than one fan in a cell while housed in D-Cell House. *Id*. Mr. Hines asserts that, at one point, it became so hot that he was found unconscious and full of sweat in his cell wearing only his boxer shorts. *Id*.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Mr. Hines alleges that Major Wardlow was deliberately indifferent to his serious medical condition because Major Wardlow knew he had epilepsy and used prison policy

2

to deny his request for a second fan though, in Mr. Hines's opinion, there were no safety or security threats with having a second fan in his cell. ECF 1 at 3-5. Though Mr. Hines asserts Major Wardlow knew about his epilepsy, it is unclear that any medical provider ever indicated that Mr. Hines needed a second fan or that Major Wardlow was aware of such an order. It is not plausible to infer from the allegations of the complaint that Major Wardlow was deliberately indifferent to Mr. Hines's serious medical condition. Therefore, he cannot proceed against Major Wardlow.

After he had been housed in D-Cell House for about two and a half months, Mr. Hines talked to Unit Team Manager Pamela Bane about being released from D-Cell House. *Id*. at 5. He explained he could not get immediate care for his epilepsy in D-Cell House and had been found unconscious in his cell because custody officers made infrequent security checks or did not make them at all. *Id*. at 5-6. He contends UTM Bane was aware of his situation because he had filed grievances and written letters to someone (he does not say who) explaining he should not be housed in D-Cell House because he was not a security threat. *Id*. at 6. Mr. Hines also indicated there were custody reports that documented his epilepsy. *Id*.

Mr. Hines asserts that he later wrote to UTM Bane and asked to be placed in a medical dorm, where there are cameras and custody officers frequently perform security checks. *Id*. at 6-7. UTM Bane responded to Mr. Hines's letter stating he would be given an evaluation to determine if he could return to general population. *Id*. at 7. Following an evaluation and completion of his time in disciplinary segregation, he was moved to administrative segregation. *Id*. at 6.

Mr. Hines asserts that UTM Bane was deliberately indifferent to his medical condition because she knew his continued stay in D-Cell House was dangerous given the limited number of custody officers available to monitor his condition. *Id*. at 7. UTM Bane had Mr. Hines evaluated and he was moved to administrative segregation. These facts do not permit a plausible inference that UTM Bane was deliberately indifferent to his medical needs. Thus, he has not stated a claim against UTM Bane.

Mr. Hines also alleges that his epilepsy causes him to have seizures requiring the use of a seizure helmet and mouthguard. *Id*. at 8-9. He alleges that Health Services Administrator Sherri Fritter, Dr. Nancy Marthakis, and Nurse Practitioner Diane Thew were deliberately indifferent to his serious medical condition because they did not get him a replacement seizure helmet and mouthguard after custody staff misplaced the equipment. *Id*. However, Mr. Hines has already sued these defendants based on this exact same allegation. *See Hines v. Neal*, 3:22-cv-425 (N.D. Ind. filed May 31, 2022), and *Hines v. Marthakis*, 3:22-cv-690 (N.D. Ind. filed Aug. 23, 2022), dismissed Sept. 2, 2022, pursuant to 28 U.S.C. § 1915A, as malicious. It is malicious to sue the same defendants for the same events in three cases. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (suit is "malicious" for purposes of Section 1915A if it is intended to harass the defendant or is otherwise abusive of the judicial process). Mr. Hines may not proceed against these three defendants.

As a final matter, Mr. Hines has sued Warden Ron Neal. However, other than listing him as a defendant in the caption of the case, he never mentions him in the body of the complaint.

4

This complaint does not state a claim for which relief can be granted. If Mr. Hines believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Cornelius LeMont Hines until **November 27, 2023**, to file an amended complaint; and

(2) CAUTIONS Cornelius LeMont Hines if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

October 30, 2023                         *s/ Damon R. Leichty*
                                         Judge, United States District Court